The last case on our calendar, I apologize to Council for being last, is United States v. Alonzo Knowles. Yes, everyone is using our high-tech system. I'll bring down my grease gun next time I come. Good morning, Your Honors. I represent Alonzo Knowles and appeal from his sentence of five years, double the guideline range. The District Court imposed a substantial upward variance in this case on a young, first-time offender for criminal copyright infringement and identity theft. I was very impressed with the fact that your client was still threatening to commit this crime while he was in prison and bragged about having a computer that the government didn't know about. Bad form. It was very bad form, Your Honor, and extremely foolish. However, the defendant immediately agreed when this was revealed. And I have to say something about those emails, which is that they really were to one person, this kind of fantasy girlfriend that he had never even met. Mr. Knowles wrote thousands and thousands of emails talking about, to his real partner in life, his real-life people, about his son and all his other problems and the problems in the family. His father, whose house was hit by a hurricane, and all kinds of—his mother had died. He had a lot of family problems, and most of his emails were to his real family about real-life things. And then there was this string of emails with this woman who had started communicating with him in prison in which he was puffing himself up and boasting like a fool, which he was. He was young and foolish, pretending that he was not just a humiliated person sitting in jail but that he was going to be a millionaire. They made no sense. His one and only attempt at this kind of thing had resulted in his immediate arrest by a sting operation. So considering the context, it was very foolish and definitely bad behavior, but he got his wake-up call. When these were revealed, he understood how serious this kind of loose talk was. He immediately agreed to relinquish the computer and give up any ability. Well, he had a choice, but his choice that he boasted about was, no, he would keep it and do the extra time. But really that was just foolish talk. It wasn't real. He arranged to have it relinquished and destroyed, giving up, as he said, all of his life was on that computer, including his personal photos and his other life's work. And he had no ability at all to use these secrets that he had acquired. So the court had asked for this procedure to be done, for him to relinquish the computer, and said that this was really going to matter at sentencing. And then, even though he did relinquish it, still doubled the guideline range and imposed basically the maximum sentence on each count. It's true he could have imposed consecutive, but that was never in anyone's mind that he would get consecutive sentences for this offense. So the question was whether this kind of substantial, significant upward departure was justified, and we contend that it was not. Procedurally or substantively? Substantively. You're not making a procedural argument. No, we're not, Your Honor. The judge very thoroughly went through all of the factors. It was a very thorough sentencing decision. It made clear that this was the main reason for the upward variance. The court said that he needed a wake-up call, that these statements dramatically changed the court's view of the kind of sentence that was required. This was clearly the driving factor in the sentence. And our argument is simply that this was too much, that this factor, this single factor of a single thread of e-mails to... No, Your Honor, that's arguably not really the standard. The standard in Jenkins, which is the court's most recent statement of what's required to show substantive unreasonableness, is that the court must evaluate each sentencing factor relied on to support an upward variance and determine whether it can bear the weight assigned it under the totality of the circumstances. And what we're arguing here is that this one factor, which is what really drove this sentence to double it and go up to the maximum of five years on each count, was insufficient to justify this sentence under these circumstances, where it was a first-time offender, a young man who had had recently a lot of trouble in his life. He had basically failed out of college. He was back living in the Bahamas with his parents. His mother died. And then while he was in jail, he had a child born. His father's house was hit by a hurricane. Really five years for this conduct, particularly since it was corrected that he did everything he could to take back what he said and make it clear that he had no intent to do anything in the future, that this sentence was unjustified by that conduct. All right. Thank you. We'll hear from the government. Thank you. Hello, Your Honors. My name is Christy Greenberg, and I'm an assistant U.S. attorney in the U.S. Attorney's Office for the Southern District of New York, representing the United States in this appeal. So I want to address first the argument that the main reason for the upward variance here was based on these prison communications. That's simply belied by the record. And I just want to point, Your Honors, to various parts in the sentencing transcript, where the court makes clear that there were numerous factors that were considered in determining the upward variance, not just these prison communications. So in the sentencing transcript, Appendix 375 through 76, the court, before imposing the sentence, invites counsel to address whether a variance was warranted. And the court specifically said that there were three issues where the court wanted counsel's views, the first being whether the loss calculations and the relevant guidelines adequately captured the harm posed by the copyright infringement and the theft scheme. That was about the seriousness of the offense and whether or not it was captured by the loss calculations of the guidelines. The second was whether or not the need for general deterrence was adequately captured by the guidelines range. And then the third was whether or not there was an interest in public protection and specific deterrence, given his stated intentions to recidivate based on his prison communications. Thereafter, the judge also said, during the imposition of sentence, all after describing in detail the seriousness of the offense, the need for general deterrence, and also these prison communications, that it was all of those reasons that led to the court's judgment that a variance well above the guidelines range was appropriate. That was at Appendix 413. Said it again, that the bottom line is, I say this, there is no surprise, a number of these 3553A factors point strongly towards a lengthy sentence significantly above the guidelines range. That's at Appendix 399. So it is very clear, given the exhaustive, at great length- Did the government take a position during sentencing on the length of the incarceration? Your Honor, the government did request and argue for an above-guideline sentence. We did not take a position as to what that should be. Simply that there should be a substantial sentence to account for the seriousness of the offense, as well as his stated communications in his prison emails about his desire to commit this very same offense again. Which, as Judge Engelmeyer notes, is a pretty classic example of an aggravating circumstance that is not contemplated by the Sentencing Commission. And again, just to come back to the standard- You get points for stupidity. Do we agree on that? Well, Your Honor, I mean, he did this post-plea. He, at that point, when he was making these, it wasn't just prison emails. It was prison calls as well. And when he is making these communications, after he's pled guilty, he maybe has some sense that nobody is listening. He's already pled, he's waiting sentencing. Isn't he told that those communications are not private? That is correct. Told about emails and calls? That's correct. And yet, he showed how stupid he was by continuing to talk about recidivating. Happens all the time, doesn't it? I mean, it's stupid, but it's also brazen. But it is fairly rare, as the court noted, if not unheard of, for a defendant before sentencing to announce a plan to break what amounts to be the exact same law again. And that's literally what he is doing in these communications. So, the first point, it's not the determining factor, but was it appropriate for the court to consider? Of course it was. It was perfectly appropriate for the court to consider that in conjunction with the totality of the circumstances here. These were not merely foolish emails to one woman he had never met. He made the same kinds of statements about his intention to go right back to doing what he was doing and hacking, and providing private information about celebrities to the woman who was the mother of his child, as well as to, it's unclear whether it was his brother or his brother's relative. Knowles submits his brother's relative. But either way, he makes the same communications to his relatives as well. So, these were not foolish, idle emails. And the court made detailed, factual findings about these prison communications and credited that Mr. Knowles, in fact, meant what he said. And that was based on the words that he used, the specific details of the calls, including the book and what it would look like. The judge listened to a tape-recorded excerpt of one of the calls between Mr. Knowles and his relative. The multiple people, again, that he contacted, the tone and tenor of his remarks, the fact that he was devoid of remorse, the fact that he had no plan to get any legitimate work, these were not idle communications. This, as the judge found, was a specific plan to go ahead and do this again. And that was absolutely significant and appropriate for the court to consider. So, Ms. Greenberg, let me ask you, because I know Ms. Cassidy says, well, look at Jenkins. And I would like the benefit of the government's position on whether Jenkins has modified in any way the standard we've laid out in Caveira for looking at substantive unreasonableness. No. Substantive reasonableness. So, in Jenkins, the court talks about what weight an aggravating factor or mitigating factor should have. And the court says that that is a matter firmly committed to the discretion of the sentencing judge. And it need not be the weight that this court may have given the factor so long as it can be explained by the court and bear the proper weight under the totality of the circumstances. That's not inconsistent with prior case law from this circuit saying that that only happens really to set aside a substantive determination in exceptional circumstances that are shocking. The fact that there would be something that would not bear the weight, it would not be consistent with the prior law. Thank you. Unless your honors have any other questions, I'll rest on my brief. Thank you. Thank you. Counsel? You have two minutes for rebuttal. I just have two points. First of all, if the record, the e-mails in the record, which are cherry-picked to be only the bad ones, there were thousands and thousands of e-mails that he sent. Mostly, as I say, not dealing with this issue at all. But they're in the appendix at A187 to 92. And they show clearly that this string of e-mails was all with this woman, Toria Hutch, this fantasy girlfriend who he'd never met. The one that the government keeps pointing to that shows that he must have been having the same conversations with his wife, with his partner, his partner, the mother of his child, is one e-mail in which he says he's going to shake up Hollywood and that some artist, some white guy who's an artist in prison had designed something for him. There's no context to that because the entire page is redacted. And if it helped the government's position, it would be unredacted. We don't know what he's talking about. But nowhere else is there an e-mail to his partner talking about spilling secrets or anything like that. Also, in the same thread of e-mails to the mystery, the fantasy woman, in the same set of e-mails, he says, oh, I'm not really going to expose anybody. I'm just going to talk about gossip. I'm not going to do anything criminal. So he's back and forth talking out of the same side of his mouth. The second point I want to address is the argument that this sentence wasn't based on these e-mails, when it clearly was. The judge in his September 12th order stated his intention to vary substantially, and the significant basis for this was the prison e-mails, and he wanted to know what was going to be done about the computer. At sentencing, he went through all the 3553A factors. It's true. He discussed every factor and which way it cut. He would have done that even in imposing a guideline sentence or even in a below guideline sentence. But in this case, he imposed an upward variance mainly, and it was clear that it was mainly based on these e-mails. And he made that clear. That was what dramatically changed his view. Thank you. Thank you. Thank you very much. Thank you very both. Thank you both very much. We'll reserve decision. That's the last case on our calendar, so I'll ask the clerk to adjourn court. Court is adjourned.